IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF RAILWAY CARMEN, ) | |
| ) | |
| Plaintiff/Petitioner, ) | |
| ) | |
| vs. ) | No. 05-00385-CV-W-SOW |
| ) | |
| KANSAS CITY SOUTHERN RAILWAY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are petitioner's Motion for Summary Judgment (Doc. #18) and defendant's Motion for Summary Judgment (Doc. #62). Both of these motions have been fully briefed by the parties. For the reasons stated below, petitioner's motion is denied and defendant's motion is granted.

I. Background

Petitioner the Brotherhood of Railway Carmen, Division of the Transportation-Communications International Union ("BRC") brought this action to enforce an arbitration award issued under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, on October 21, 2003. Defendant Kansas City Southern Railway Company ("KCS") believes that a corrected award issued on December 20, 2003, is the final award of the panel.

The undisputed material facts relevant to the pending motions for summary judgment are as follows: defendant KCS is a "carrier" engaged in interstate railroad transportation as defined by the RLA. The Transportation-Communications International Union is a labor organization with its headquarters in Maryland. The BRC is the duly designated representative, pursuant to

the RLA, of KCS's employees in the craft or class of carmen. The Claimant in the Public Law Board Award at issue in this case is Kelley C. Fletcher, who was employed by defendant KCS as a carman in Kansas City, Missouri.

BRC and KCS are parties to a collective bargaining agreement, effective April 1, 1980. As amended thereafter, the agreement governs rates of pay, rules, and working conditions of the carmen employed by KCS. Rule 29 of the collective bargaining agreement provides a grievance procedure for an employee to challenge any disciplinary actions. Under Rule 29, an employee or his representative may appeal an adverse decision of the carrier's highest officer within 9 months to a Board established under RLA Section 3.

On March 11, 2002, KCS advised Kelley Fletcher of an investigative hearing to "ascertain the facts and determine your responsibility, if any, in connection with the following alleged incidents that occurred during the months of October through December 2001, on one or more occasions, in or around the KCS Car Shop in Kansas City, Missouri . . . ." The alleged incidents were:

> 1. You engaged in activity on duty and/or on company property that created a hostile and offensive environment. This activity and offensive conduct includes purporting to be a negatively stereotypical Afro-American male, to wit: wearing afro and dreadlock wigs, a suit you described as a "pimp" costume and wearing trousers or pants below the waist while making obscene gestures and/or racial remarks.
>
> 2. You failed to wear proper personal protective equipment when you wore a dreadlock wig while operating a forklift.

On March 22, 2002, a hearing was held before a hearing officer appointed by defendant KCS. On April 4, 2002, the hearing officer issued his findings, concluding that the evidence

presented at the hearing supported the allegations that Fletcher had worn "afro and dreadlock wigs" while on duty and/or on company property, and that such conduct violated certain KCS work rules. Fletcher was absolved of a portion of charge No. 1 and "also of charge No. 2 in its entirety." The hearing officer concluded that Fletcher would be dismissed from service effective April 2, 2002.

BRC filed a grievance challenging Fletcher's dismissal under Rule 29 of the collective bargaining agreement on May 30, 2002. Defendant KCS denied the grievance. Then, BRC appealed to the highest designated KCS officer who issued a final denial on September 10, 2002.

Defendant KCS and petitioner BRC agreed to submit Fletcher's grievance to arbitration on or about June 11, 2003, for final and binding resolution. The parties entered into an agreement ("PLB Agreement") establishing a Special Board of Adjustment designated as Public Law Board No. 6661 ("the Board"). The PLB Agreement provided for a three-member Board consisting of Carrier Member John S. Morse, Organization Member Gerald Gray, and a neutral member appointed by the partisan members.

The PLB Agreement states that any two panel members are competent to issue an award and that such awards are "final" under §3 of the RLA, 45 U.S.C. §153, First. The PLB Agreement does not address whether the carrier or the union may request reconsideration of all or part of an award before it is signed by two board members.

The partisan board members selected Ann S. Kenis as the Board's third and neutral member. The National Mediation Board then sent Kenis a certificate of appointment quoting language from RLA Section 3, Second, "Any two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if

3

in favor of the petitioner, shall direct the other party to comply therewith on or before the day named."

KCS and BRC made written submissions to the Board based on the record of on-property handling. Those submissions included the transcript and exhibits from the disciplinary hearing, the hearing officer's decision, the grievance challenging that decision, the final denial, and appeals. The Board heard Fletcher's case on September 29, 2003.

On October 21, 2003, Neutral Member Kenis sent the partisan members a letter which stated: "Enclosed please find two copies each of the award rendered in the above-captioned public law board. Please execute, exchange copies between yourselves and send one signed copy back to me for my file." Enclosed with the letter were signed copies of an award. The enclosed Award held, in relevant part, that Fletcher had, on one occasion, worn a racially offensive wig, and that such an isolated action was not sufficiently egregious to support the decision to dismiss Fletcher. The award then stated:

> We therefore conclude that Claimant's dismissal, when viewed in light of the misconduct actually established on the record, was unreasonable and arbitrary. Claimant's dismissal is hereby reduced to a thirty (30) day suspension. Carrier is directed to compensate Claimant for all time lost, but for the thirty (30) day suspension, and to restore all contractual benefits set forth in the Organization's claim.

On October 27, 2003, before any panel member other than Kenis had signed this Award, Carrier Member Morse requested an "Executive Session" of the arbitration panel on behalf of KCS to discuss the Award. BRC admits that Executive Sessions are sometimes held before an arbitrator issues a final award.

In a November 14, 2003 letter, Carrier Member Morse confirmed that an Executive

Session for the Board had been scheduled for November 25, 2003. Along with the letter, Carrier Member Morse submitted a memorandum (entitled "Carrier Member's Proposal for Modification of Proposed Award No. 1") to Arbitrator Kenis and Organization Member Gerald Gray highlighting certain factual errors in the Award proposed by Kenis and requesting modification thereof. At no time prior to the Executive Session did BRC object to an Executive Session being held on November 25, 2003.

On November 25, 2003, Arbitrator Kenis, Gray, and Morse met in Chicago for the Executive Session. During the Executive Session, Gray advised Arbitrator Kenis and Morse that he had, just prior to the start of the Executive Session, signed the initial Award sent out by Kenis. Gray argued that this action meant the Award was final and that Kenis could not hear or consider KCS's arguments. Kenis rejected Gray's arguments.

Thereafter, despite having argued that Kenis had no jurisdiction to change the initial Award, Gray agreed to a requested change to the statement of the claim, acknowledging that Kenis's statement of the claim in the initial Award was incorrect.

Kenis issued a Second Award on December 29, 2003. In a cover letter, Kenis explained that she had modified the statement of the claim per the parties' agreement. Kenis described the first Award she had sent out as a "proposed award," and explained that she had given "insufficient weight . . . to the fact that Claimant wore the wigs on more than one occasion. Regardless of whether offense was taken by employees other than Mr. Jeffrey, Claimant's actions were racially distasteful and subjected him to discipline. When this multiplicity of incidents is properly factored into the balance, I believe that backpay is inappropriate under the circumstances." This revised Award converted Fletcher's discharge to a suspension without

5

Case 4:05-cv-00385-SOW   Document 68   Filed 10/13/05   Page 5 of 12

backpay. The revised Award stated:

> Taking all the foregoing factors into consideration, we conclude
> that Claimant shall be reinstated, but without pay for time lost.
> The time out of service should serve as a wake-up call to the
> Claimant and other employees that racially offensive conduct is not
> acceptable in the workplace even if intended as lighthearted or
> harmless.

The only post-award procedure set out in the PLB Agreement is contained in ¶ F, which states in relevant part: "should a dispute arise involving the interpretation of an Award while the Board is in existence or within sixty (60) days after the Award is rendered, the Board, upon request of either party, shall interpret the Award in light of the dispute." The PLB Agreement does not address whether the carrier or the union may request reconsideration of an award before it is signed by two board members. KCS asserts that unions and carriers often ask arbitrators to reconsider all or part of their decision in what are known as "Executive Sessions." KCS states that the use of "Executive Sessions" is common in cases involving the discharge or discipline of employees.

In a letter dated January 5, 2004, Organization Member Gray protested Kenis's Second Award. Gray stated:

> After allowing the Carrier to submit a "post hearing" submission
> containing new arguments and much new material that was not a
> part of their original submission nor contained in the on-property
> handling of the claim, you changed your decision, and based your
> "revised" Award upon these new arguments and new materials.

Gray ended his letter by requesting a second Executive Session.

By letter dated January 12, 2004, Carrier Member Morse provided Gray with the original signed copy of the Second Award. In the letter, Morse requested that Gray sign the original and

6

return it to him so that he could send copies to Kenis and the National Mediation Board. Morse also wrote a letter to Kenis on January 19, 2004, objecting to statements in Gray's letter of January 5, 2004.

On January 20, 2004, Gray sent a letter to Carrier Member Morse, copied to Neutral Member Kenis. The letter stated:

> This will also advise you that, inasmuch as the Arbitrator issued an Award on the same case and furnished us both with a signed copy which was accompanied by her letter dated October 21, 2003, and which I signed on November 25, 2003, I have no intention of signing the new Award which you enclosed with your letter.
>
> I advised both you and the Arbitrator during Executive Session on November 25, 2003 in Chicago, IL that I had signed the original Award on that date, and, since the Arbitrator had already signed it, I considered that Award to be final and binding on all parties. This is in accordance with section (I) of the Agreement which established Public Law Board No. 6661.

Defendant KCS adds that in his letter, Gray also argued that the Final Award could not be signed because he had requested an Executive Session on January 5, 2004, before Morse had signed the Final Award.

Another Executive Session was held on February 17, 2004, with all Board members present. Gray requested that Kenis withdraw her Second Award because it exceeded her jurisdiction. Gray also argued that the Initial Award had become final under the PLB Agreement when he signed it just before the Executive Session was scheduled to begin in November of 2003. Kenis rejected Gray's argument. Kenis stated that the Initial Award had not become final, that she interpreted the PLB Agreement as permitting her to modify the remedy in the Award, and that she had similarly revised the remedy in awards through Executive Sessions in the past.

7

According to Kenis, she had incorrectly found in the Initial Award that there was only one incident where Fletcher had worn the inappropriate wigs and that she was modifying the award to reflect that there were, in fact, multiple incidents. Kenis stated that the Second Award superseded the First Award.

Also during the second Executive Session, Gray alleged that Kenis had engaged in collusion with KCS. Kenis denied the allegation and Gray admitted that he had no proof of any such collusion.

Neutral Member Kenis resigned from PLB 6661 the following day, February 18, 2004. That same day, Carrier Member Morse forwarded the Second Award to the National Mediation Board, stating that it was Kenis' Final Award. This award was stamped by the National Mediation Board and docketed as the Final Award of the arbitration board.

It is undisputed that defendant KCS has complied with the Second Award, but not with the First Award.

## II. Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The Railway Labor Act, 45 U.S.C. §§ 151-188, governs labor relations in the transportation industry and provides an extremely narrow scope of judicial review of arbitration cases.

Under Section 3, First(q) of the RLA, when a party refuses to comply with an arbitration award, an action for enforcement may be brought in a federal district court. In such an action, "the findings and order of the . . . Board shall be conclusive on the parties . . . ." 45 U.S.C. §153,

First (p). This enforcement provision contains only three narrow grounds upon which this Court can find that the award should not be enforced: (1) failure of the board to comply with the requirements of the RLA; (2) failure of the order to conform, or confine itself, to matters within the scope of the board's jurisdiction; or (3) fraud or corruption by a member of the board. 45 U.S.C. §153, First (q).

III. Discussion

The issue before this Court is whether the First Award sent out by Kenis became the Final Award of PLB 6661 when Gray signed it or whether the First Award was superseded by the Second Award which became the Final Award of PLB 6661 when Morse signed it.

It is undisputed that after Kenis issued the First Award, Carrier Member Morse requested an Executive Session to discuss the First Award. Notably, Organization Member Gerald Gray did not object to an Executive Session being held. Instead, a date for an Executive Session was agreed to and all of the Board members traveled to Chicago to attend the Executive Session.

Petitioner BRC relies on the fact that just before the Executive Session began, Gray signed the First Award and then claimed that his signature made the First Award a Final Award. Kenis rejected Gray's argument and the Board members proceeded with the Executive Session.

Petitioner BRC has raised a procedural jurisdictional challenge to Arbitrator Kenis's decision to proceed with an Executive Session after Gray signed the First Award. The United States Court of Appeals for the Eighth Circuit has held that an arbitrator's procedural determinations may be set aside only when the arbitrator is guilty of misconduct or bad faith. Brotherhood of Maint. of Way Employees v. Terminal R.R. Ass'n of St. Louis, 307 F.3d 737, 740 (8th Cir. 2002)(citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40

(1987)).

In this case, Arbitrator Kenis made a procedural ruling that she would hold an Executive Session to discuss the First Award before the First Award became final. KCS sought review of the First Award based upon the belief that it contained factual errors. BRC concedes that the First Award was factually incorrect regarding the number of times Fletcher wore inappropriate wigs in the workplace or on company property.

KCS asserts that it is common practice in the railroad industry to hold Executive Sessions before an arbitrator's award becomes final. BRC admits that Executive Sessions are sometimes held before an arbitrator issues a final award. Arbitrator Kenis stated that she often reconsidered the remedy portion of her awards in Executive Sessions, as happened in this case. In fact, BRC requested another Executive Session after Kenis issued the Second Award in January of 2004.

There is no evidence that Kenis committed misconduct or acted in bad faith in agreeing to an Executive Session after she mailed the First Award to Gray and Morse. BRC has not identified or even alleged any such misconduct or bad faith. There is no indication that BRC was deprived of a fair hearing.

Accordingly, this Court finds that there is no basis for overruling Arbitrator Kenis's procedural decision to hold an Executive Session after she mailed Gray and Morse copies of the First Award she had drafted.

Next, BRC argues that even if Kenis had the authority to agree to an Executive Session, Gray's signing of the First Award made that award a final award. The United States Court of Appeals for the Eighth Circuit has held, however, that an arbitrator has the authority to modify a signed award if the arbitrator did not intend for the award to be final. Local P-9, United Food &

10

Commercial Workers v. George A. Hormel & Co., 776 F.2d 1393, 1396 (8th Cir. 1985).

Once Kenis agreed to an Executive Session to consider KCS's request that she modify the First Award, without any objection being made by BRC to an Executive Session, it should have been clear to the parties that neither could sign the First Award and thereby turn it into a final award. BRC has conceded that there were factual errors in the First Award sent out by Kenis.

In addition to granting the request for an Executive Session, which expressed the intent to at least consider modifying the First Award that had been mailed to Gray and Morse, Kenis informed both Gray and Morse by letter dated December 29, 2003 that the First Award was a "proposed award."

Later, BRC requested an Executive Session in response to the Second Award issued by Kenis. Before the Executive Session was held, Morse signed the Second Award. Gray took the position that his request for an Executive Session prevented Morse from signing the Second Award and thereby converting it to a final award. BRC cannot have it both ways.

Once an Executive Session is requested and granted by the arbitrator, the arbitrator's signature is effectively removed from the award and the parties proceed with an Executive Session. Any other finding would allow one board member to overrule the arbitrator's decision to hold an Executive Session simply by signing the pending award. This would be an illogical result.

Subsequently, Kenis issued the Second Award. Morse signed this Second Award. It became the Final Award of the Board and was docketed by the National Mediation Board as the Board's Final Award. Defendant KCS has complied with the Second Award.

IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that petitioner's Motion for Summary Judgment (Doc. #18) is denied. It is further

ORDERED that defendant's Motion for Summary Judgment (Doc. #62) is granted. It s further

ORDERED that the Clerk of the Court shall enter final judgment in favor of defendant Kansas City Southern Railway Company at this time.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 10-13-05